IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACOB MATTHEW MEDINA, | Case No. 3:26-cv-270-SI |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| ACTING WARDEN, A. COOPER, | |
| Respondent. | |

Jacob Matthew Medina, FCI Sheridan, Petitioner *pro se*.

Scott E. Bradford, United States Attorney; and Andrew T. Ho, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Respondent.

**Michael H. Simon, District Judge.**

Petitioner Jacob Matthew Medina ("Petitioner") is an inmate currently housed at FCI

Sheridan. Representing himself, Petitioner has filed a Petition for Writ of Habeas Corpus

under 28 U.S.C. § 2241 ("Petition"), ECF 1. He argues that his due process rights under the Fifth

Amendment were violated while he was an inmate at FCC Victorville, when he was found guilty

through prison disciplinary proceedings of the infraction of Fighting with Another Person.

Petitioner also argues that the Bureau of Prisons ("BOP") did not have the requisite "some

evidence" supporting the disciplinary conviction, violated its own policies during the

PAGE 1 – OPINION AND ORDER

proceedings, and was biased. As a sanction for Petitioner's infraction, the BOP removed 27 days of good behavior credit.

Petitioner contends that his rights were violated because: (1) he did not timely receive his original incident report; (2) he was not allowed to call the witness that he desired to call during his disciplinary proceedings; (3) the BOP used coercion and made false statements; (4) the BOP improperly refused to consider video surveillance evidence; and (5) the BOP refused to consider self-defense as a defense to the charge. Petitioner also files a motion to compel.[1] For the reasons that follow, the Court denies Petitioner's Petition and his related motion to compel.

**LEGAL STANDARDS**

### A. Petition Under 28 U.S.C. § 2241

"As a general rule, [28 U.S.C.] § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008) (quotation marks omitted). In contrast to challenges to the legality of a conviction and sentence, "petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). A habeas claim must still fall within the "core of habeas corpus," meaning that a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). "Habeas corpus jurisdiction is available under 28 U.S.C. sec. 2241 for a prisoner's claims that he has been denied good time credits without due process of law." *Bostic v.*

---

[1] Petitioner also files a motion for summary judgment, requesting summary judgment in his favor on his Petition. The Court denies this motion as moot because the Court resolves Petitioner's Petition in this Opinion and Order.

*Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922, 931 (9th Cir. 2016) (en banc).

## B.  Rights in a Disciplinary Hearing

Federal prisoners have a due process interest in the disciplinary proceedings that may take away good conduct time credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *see also id.* at 557 (invoking "the accepted due process analysis as to property" to hold that a "statutory right to good time" credits constituted a liberty interest). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. Instead, "there must be mutual accommodation" between Constitutional guarantees of adequate process and prisons' legitimate penological interests. *See id.* at 556. Thus, due process in a prison disciplinary hearing is satisfied if the inmate receives: (1) written notice of charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Id.* at 563-67; *see also Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Additionally, "some evidence" in the record must support a prison's disciplinary decision. *Hill*, 472 U.S. at 454-55 (stating that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record" (quotation marks and citation omitted)). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence." *Id.* at 455. The "some evidence" standard is "minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).

## BACKGROUND

On May 20, 2021, Petitioner pleaded guilty to Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi), and (b)(1)(B)(i). *United States v. Jacob Matthew Medina*, Case No. CR 19-00329-01-PHX-DLR (D. Ariz.), ECF No. 169. On January 4, 2022, the District of Arizona sentenced Petitioner to 160 months' imprisonment. *Id.*, ECF 147, 149.

On March 19, 2024, while an inmate at FCI Victorville, Petitioner was involved in a fight with five other inmates. ECF 1-1 at 2. Petitioner asserts that he was attacked and he fought back in self-defense. The fight was investigated and an incident report was written, but it needed to be rewritten. Declaration of Ramon Cueva ("Cueva Decl.") ¶ 9. The rewrite was completed and served on Petitioner on March 22, 2024. *Id.* This is past the 24-hour period BOP regulations establish by which "ordinarily" an incident report will be provided to an inmate. *See* 28 C.F.R. § 541.5(a). The applicable BOP Program Statement explains that an incident report may be delivered later if "there is good cause for later delivery." Cueva Decl. ¶ 9 (quoting BOP Program Statement 5270.09 § 541.5(a)).

An investigation follows an incident report. *See* 28 C.F.R. § 541.5(b). During the investigation Petitioner did not make a statement, request any witnesses be interviewed, or request that other evidence (such as video surveillance tapes) be obtained and reviewed. *See id.* § 541.5(b) (explaining a prisoner's rights during the initial investigation); Cueva Decl. Ex. 3 at 8 (explaining the evidence relied on by the Unit Discipline Committee ("UDC") and Petitioner's conduct). On March 27, 2024, the UDC concluded that Petitioner committed the infraction and referred the matter to a Discipline Hearing Officer ("DHO").

PAGE 4 – OPINION AND ORDER

Petitioner was advised of his rights in the hearing before the DHO. He could bring witnesses and request a staff representative. *See* 28 C.F.R. § 541.8. He could testify and submit documentary and other evidence. *Id.* The DHO's decision must be "based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* § 541.8(f). Petitioner requested Officer King, the officer who wrote the incident report, as a witness. The DHO took issue with that request and that the documents referenced in the UDC decision were not in the system and sent the matter back to the UDC. On April 19, 2024, the Warden signed an advisement of a delay explaining the delay for documents to be uploaded to support the charge.

On April 26, 2024, a new UDC hearing was held. Petitioner continued to remain silent, not request a staff representative, and not request any witnesses testimony. At the conclusion, this time he did not request Officer King as a witness before the DHO. *See* Cueva Decl. ¶ 12. Petitioner's DHO hearing was conducted on May 2, 2024, before Cueva. Petitioner did not request witnesses or a staff representative and did not address how video evidence was exculpatory to the charge against him. *Id.* ¶ 13. He generally complained that his due process rights had been violated and asserted that his actions were in self-defense.

Cueva concluded that the delays during the process did not infringe Petitioner's due process rights. Petitioner was given information before his hearings, and he could not articulate how any delay affected his right to defend against the charges. Cueva reviewed "the incident report, medical assessment, extension memo from the Warden, photographs, and staff memorandums" and concluded that Petitioner committed the infraction of Fighting with Another Person. *Id.* Cueva noted Petitioner's assertion of self-defense but determined that BOP does not recognize that "as a viable defense against the charge." *Id.* Cueva sanctioned Petitioner to 27 days loss of good conduct credit and three months loss of phone and commissary privileges. *Id.*

PAGE 5 – OPINION AND ORDER

In a Court filing, Cueva added that on April 15, 2026, he reviewed the relevant video evidence from the fight and concluded that it did not contain any exculpatory information. *Id.* ¶ 14. He explained that the camera was turned away from the area and did not "swing" to the fight until after the participants were on the ground and under control. Second Cueva Decl. ¶ 5.

## DISCUSSION

### A. Motion to Compel

Petitioner has filed a motion to compel. When a petitioner "establishes a prima facie case for relief," the Court has the express authority to "use or authorize the use of suitable discovery procedures . . . 'to dispose of the matter as law and justice require.'" *Harris v. Nelson*, 394 U.S. 286, 290 (1969) (quoting 28 U.S.C. § 2243); *see also* Rule 7, Rules Governing Section 2254 Cases in the United States District Courts [hereinafter "Habeas Rules"] ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials related to the petition."); *id.* at Rule 1(b) (enabling a court to apply these rules to petitions brought under other statutes). Discovery generally is not appropriate absent a showing of good cause. *See* Habeas Rules 6(a) (empowering a court to authorize discovery in habeas corpus proceedings for "good cause"); *Tillery v. Shartle*, 778 F. App'x 426, 428 (9th Cir. 2019) (applying "good cause" standard to a request for discovery in a § 2241 habeas case).

Setting aside that Petitioner has not demonstrated a prima facie case to warrant the use of discovery, Petitioner has not shown good cause to support such a request. "Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. " *Sivak v. Hardison*, 658 F.3d 898, 927 (9th Cir. 2011) (cleaned up).

Petitioner's first request, for a copy of the "original incident report" is moot because the original incident report is in the record at ECF 9-4 at 6 (Cueva Decl. Ex. 3 at 6). Similarly, his

second request for a "delay memorandum" based on the rewriting of the original report and his fifth request for documents relating to the rewrite of the incident report are rejected because the Court has reviewed the original and the rewrite and finds nothing suspicious on which to base a demand for further discovery. Additionally, Petitioner received the rewritten report well in advance of his UDC hearing, and thus he had sufficient due process under *Wolff*, which requires only that the charges be provided 24 hours before the hearing. 418 U.S. at 563-64. At best, Petitioner might be able to argue that Respondent did not comply with a BOP program statement, but that is not a basis on which to base a habeas claim. *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). Thus, this requested discovery would not show that Petitioner is entitled to habeas relief or alter the outcome of this case.

Petitioner also fails to show good cause for his third request, to require an "audit" of the Discipline & Administration Reintegration Tracking System ("DARTS") entries. Cueva states that he attached to his Declaration a "true and correct copy of a DARTs printout that dictates a timeline of the disciplinary process," and the printout reflects entries from March 20, 2024 to May 16, 2024. ECF 9 ¶ 9; ECF 9-5. Petitioner offers no good cause to dispute this printout.

Finally, Petitioner fails to show good cause to require video surveillance records. This is because regardless of what video evidence might show, self-defense is not a defense to the charge under BOP policy, and, as discussed below, Petitioner has no constitutional due process right to a claim of self-defense under the present circumstances.

## B. Asserted Due Process Violation

Petitioner's primary arguments that his due process rights were violated are based on the original denial of his right to call Officer King, who wrote the first-level incident report, the delay caused by that rewrite in providing him the report more than 24 hours after the incident,

PAGE 7 – OPINION AND ORDER

and that video surveillance evidence was not viewed or preserved. None of these arguments are persuasive.

### 1. Calling Officer King as a Witness

For Petitioner's first point, an inmate has a right at a disciplinary hearing to "marshal the facts and present a defense." *Wolff*, 418 U.S. at 564. "Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals, but there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Piggie v. Cotton*, 344 F.3d 674, 677 (9th Cir. 2003) (citation omitted). The inmate's interest in presenting witnesses must be weighed against "the needs of the prison, and some amount of flexibility and accommodation is required." *Wollf*, 418 U.S. at 566. An inmate, however, may not be denied "the right to call important witnesses solely for the sake of administrative efficiency." *Bostic*, 884 F.2d at 1273.

Petitioner's claim on this ground fails for two reasons. First, he did not request that Officer King be a witness when his incident was sent back to the UDC and the process began again for his DHO hearing. For the second hearing, Petitioner requested no witnesses.

Second, even if that failure is forgiven as futile, the original denial of Officer King as a witness was well-taken. Officer King wrote the incident report and thus his testimony was "repetitive" to the incident report. *See, e.g.*, *id.* at 1274 (concluding that the DHO's decision not to call a requested witness did not violate due process where the petitioner failed to show that the witness was "crucial to [his] defense" and "not repetitive"). Petitioner fails to show how Officer King testifying live would have made a difference when his written statement was in the record. *See, e.g.*, *United States v. Valenzuela-Bernal*, 458 U.S. 858, 859 (1982) (holding that to make out a constitutional violation, a petitioner must "at least make some plausible showing of how [a witness'] testimony would have been both material and favorable to his defense").

PAGE 8 – OPINION AND ORDER

## 2. Delay in incident report

Petitioner's second argument, the harm from the alleged delay in receiving the incident report after 24 hours, is based on a BOP regulation and program statement. Federal habeas claims cannot be sustained based such alleged violations. *See, e.g. Reeb*, 636 F.3d at 1227 ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."); *Smith v. Apker*, 2014 WL 1515145, at *5 (D. Ariz. Apr. 18, 2014) (stating that "a violation of a Bureau of Prisons' regulation does not rise to a due process violation"). A prisoner's right to due process in the disciplinary process is "violated only if he was not provided with process sufficient to meet the *Wolff* standard," regardless of "whether the prison complied with its own regulations." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (collecting cases), *overruled on other ground by Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Therefore, Petitioner "is not entitled to federal due process protection for any . . . violations of prison regulations that exceed what *Wolff* requires." *Fitch v. Entzel*, 2019 WL 2610976, at *9 (C.D. Cal. Mar. 21, 2019), *report and recommendation adopted sub nom. Fitch v. Carr*, 2019 WL 1931738 (C.D. Cal. Apr. 30, 2019). Petitioner received his incident report beyond the first 24 hours, but five days before his UDC hearing. Federal due process only requires that the report be provided 24 hours before the hearing. *Wolff*, 418 U.S. at 563-64. Thus, his due process claim based on delayed notice fails as a matter of law.

Additionally, the regulation Petitioner relies on only establishes that "ordinarily" a report will be provided within 24 hours. That is not a mandate. The program statement allows for later delivery with good cause, and Respondent asserts good cause in the original incident report being rewritten because the incident writer had to amend or correct information in the report. *See Martin v. United States*, No. 23-4037, 2025 WL 1662682, at *1 (9th Cir. June 12, 2025)

PAGE 9 – OPINION AND ORDER

("Because those time frames are not mandatory, Petitioner has not established a violation of either regulation."). Ultimately, however, regardless of whether the incident report properly was rewritten or properly was delayed, Petitioner received sufficient notice *before his hearing* and that is all due process requires under these circumstances.

### 3. Video Surveillance

Petitioner's final due process argument is that Respondent did not consider video surveillance evidence that would have shown his claim of self-defense was truthful. Petitioner did not raise the issue of video surveillance during his disciplinary process. He raised it after the process was complete, in appeals. During the process, however, in his DHO hearing, Petitioner did state that he had acted in self-defense. Cueva, the DHO, considered that defense and rejected it, not because he did not believe Petitioner, but because "the Bureau does not recognize self defense, therefore any combat, especially striking for any reason, is considered an altercation or Code 201 Fighting with Another Person." ECF 9-4 at 3.

In his reply, Petitioner asserts that the BOP's blanket policy of rejecting self defense as a defense violated Petitioner's due process rights, without citing any authority. Petitioner contends that the BOP may not reject self-defense when a prisoner does not instigate the violence and acts solely to protect himself from immediate harm, again without citing authority.

Neither the Supreme Court nor the Ninth Circuit have addressed whether there is a constitutional requirement that prison disciplinary proceedings recognize self-defense. In an unpublished decision, the Ninth Circuit "assum[ed]" such a right existed, but found its parameters met when the prison considered and rejected the defense as unsupported and made a decision otherwise supported by "some evidence." *Crosby v. Shinn*, 695 F. App'x 275 (9th Cir. 2017); *see also MacMillan v. Pontesso*, 73 F. App'x 213, 214 n.1 (9th Cir. 2003) (noting the petitioner's argument that BOP's rule violated his constitutional due process rights, expressing

PAGE 10 – OPINION AND ORDER

skepticism at such a claim based on *Wolff*, but declining to reach the constitutional issue because the record showed that the petitioner's self-defense claim was considered and rejected and thus he received constitutionally sufficient due process).

Other circuits, however, have reached this issue and have determined that in prison disciplinary matters, an inmate's does not have a constitutional right to assert self-defense. *See, e.g.*, *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011) ("[I]nmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings."); *Rowe v. DeBruyn*, 17 F.3d 1047, 1052 (7th Cir. 1994) ("Next, we consider if the right to self-defense is a fundamental constitutional right within the Due Process Clause itself. We conclude that it is not."); *Williams v. Kort*, 223 F. App'x 95, 100 (3d Cir. 2007) ( agreeing with *Rowe* that "prisoners do not have a federal constitutional right to self-defense").

The Seventh Circuit's *Rowe* decision is the seminal case on this issue. In *Rowe*, the Seventh Circuit explained that courts owe prison administrators deference in implementing policies, and that "[a] right that threatens to undermine prison discipline by encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution." 17 F.3d at 1052-53. The court concluded that the no self-defense policy "acts as a didact by warning prisoners that violence against another inmate is a unilaterally condemned and perpetually sanctionable violation of prison rules. It also acts as a deterrent because a prisoner who is caught fighting cannot reliably exculpate himself later with a claim of self-defense." *Id.* at 1053.

The *Rowe* panel was divided, however, and the dissent argued from a substantive due process standpoint that the majority opinion:

> sanctions the decision of the state government of Indiana to require
> that any person incarcerated under its authority submit, no matter

what the circumstances, to any threat to life or bodily integrity without any recourse to self-defense of any kind. This holding renders the phrases of *Wolff* meaningless poetry.

I do not believe that it is hyperbole to characterize the position of the majority as a novel one. As the majority implicitly admits, no court has ruled directly on whether the state may, consistent with the due process clause, impose, as a matter of absolute liability, a sanction for protecting oneself from death or bodily harm. There is indeed authority for the proposition that there is no "constitutional right of self-defense, founded in the Eighth, Ninth, and Fourteenth Amendments, which an accused cannot be required to prove." *White v. Arn*, 788 F.2d 338, 347 (6th Cir. 1986), *cert. denied*, 480 U.S. 917 (1987). However, as even the majority seems to acknowledge, the question of the allocation of burden of proof, the issue before the court in *White* and similar cases, is different from the issue of whether the state can require someone to accept grievous bodily injury or even the possibility of death as the price for not incurring criminal or quasi-criminal liability. . . .

* * *

There must be a demonstration on the part of the prison authorities that the deprivation in question is indeed "reasonably related to legitimate penological interests" of the corrections system. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The principal reason offered by the majority has a superficial appeal. The absence of self-defense, it maintains, fosters a peaceful environment within the prison walls because it acts as a deterrent to all violence. A prisoner caught fighting, it reasons, cannot reliably exculpate himself later with a claim of self-defense. Yet, we are told in the following sentence, a prisoner can claim self-defense in mitigation of punishment, thus, it would seem, destroying a good deal of the supposed deterrent.

The difficulty with the majority's position is its assumption that the self-defense afforded to prisoners would have to be the same as that available in the general community and could not take into consideration the difficult circumstances of modern prison life. It may well be that self-defense in the prison environment ought to be available as a defense of extreme last resort and available only when the prisoner can establish that he cannot rely on the state to protect him, a situation that, the cases of this court make clear, occurs with some frequency. But to forbid all resistance to all threats to life and bodily integrity is not to ensure a lack of violence, as the majority suggests, but to leave the weak and the vulnerable the easy prey of the strong and the vicious. It is indeed a novel proposition of constitutional law to hold that a state, having

> deprived a person of liberty according to law, can further punish that individual for attempting to stay alive, even when the state itself is not ready, willing, or capable of assuming that responsibility by substituting its own strong arm for that of the prisoner-victim.

*Id.* at 1054-56 (Ripple, J., dissenting).

The Court agrees with the Eastern District of California that "[c]learly, Judge Ripple's position makes sense. In the situation where there are, on the one side, a pure aggressor, and on the other, a victim only, it does nothing to deter violence in prison by not allowing the victim to survive by defending himself." *Dunn v. Swarthout*, 2014 WL 3529915, at *11 (E.D. Cal. July 15, 2014). The better practice, thus, is not to foreclose all due process claims based on self-defense, but to "place the burden of proof upon the prisoner claiming self-defense, and that proof would have to be substantial. It would have to include substantial evidence that the victim was not responsible for the fight in any significant way." *Id.* at *12. The undersigned adds that the victim also would need to show that his life was in danger, not simply that someone engaged in some level of violence against the victim (e.g., shoving, kicking at shins, a single punch, and so forth).

Petitioner offers no evidence that he was not responsible for the fight except his own statements, mostly made after his DHO hearing. At the hearing, he stated only that he acted in self-defense, without providing any details. His statement in his administrative appeal describes that he "was being escorted to work by Officer L. King III" after Petitioner completed Officer King's "money smart" class, when he was rushed and assaulted by several other inmates. ECF 1-1 at 4. Officer King, however, states that he "responded to inmates fighting" and "upon arrival" all six inmates were already engaged in a fight. ECF 9-4 at 5.

Petitioner also does not offer evidence showing that his life was in danger. Officer King describes a fight where "all six inmates were striking each other in the upper torso and face with closed fist[s]." *Id.* He does not describe that five inmates were all attacking Petitioner. There is

PAGE 13 – OPINION AND ORDER

no indication that Officer King did not arrive quickly, and he reports that it took only two sprays of chemical irritant to stop the fight. There is no evidence that Petitioner was significantly injured. The Court declines to find that such conduct requires the "extreme last resort" of self-defense. *See Rowe*, 17 F.3d at 1055 (Ripple, J. dissenting).

Regarding the video evidence that Petitioner states could have exculpatory evidence, the Court accepts Cueva's statements provided under oath in this case that he was asked to locate any relevant video recording, he located the recording, he watched the recording, and it did not have any relevant information. Petitioner argues that this could not be true because in response to the appeal of a different inmate from the same incident,[2] Zachary J. Kelton, Acting Regional Director of the Mid-Atlantic Region, stated that the video was no longer available. ECF 14 at 11-12. Mr. Kelton was reciting information from the DHO at FCC Butner, who indicated that he had checked into the video at the time of that the other inmate's second hearing and was informed the video was not available due to the lapse in time. *Id.* at 11. Regardless of the double hearsay contents of this unsworn statement by Mr. Kelton, Mr. Cueva states under oath here that he received and watched the video. Perhaps the DHO at Butner did not request the video from the correct source, the search was not thorough, or the video was misplaced at that time. Whatever the reason for Mr. Kelton's May 2025 statement, the Court has no basis to doubt Mr. Cueva's current statement under oath.

---

[2] Notably, the appeal by Alexandro Gomez bears a striking resemblance to Petitioner's appeal, including opening with a statement that Mr. Gomez was being escorted to work by Officer King after completing his "money smart" class when Mr. Gomez was assaulted by several inmates. ECF 14 at 5. Mr. Gomez raises nearly identical claims as Petitioner. Presumably if Mr. Gomez was the one assaulted by the group of inmates, then Petitioner would have been one of those inmates, and if Petitioner is the one assaulted by the group, then Mr. Gomez would have been one of that group. Neither Petitioner nor Mr. Gomez state that it was the two of them versus a group of other inmates. Their appeal statements, therefore, are inconsistent, but may have been written by the same person or at least jointly.

PAGE 14 – OPINION AND ORDER

### C. Remaining Claims

Petitioner's remaining claims are that the requisite "some evidence" supporting the DHO's determination is lacking, Respondent's decision violated its own policy, and Cueva was biased and not an impartial adjudicator. None of these arguments have merit.

First, there was more than sufficient evidence to support the DHO's conclusion that Petitioner violated the rule against fighting. There was an incident report memorializing the statement of Officer King. There also were photographs, a medical assessment, and staff memorandums. Additionally, Petitioner himself admitted to fighting, he simply claimed it was self-defense. This surpasses the "minimally stringent" level of proof required to uphold a prison disciplinary decision. *See Cato*, 824 F.2d at 705; *see also Hill*, 472 U.S. at 455-57 (explaining that the task of the reviewing court is limited to determining whether there is any evidence, even if "meager," in the record to support the DHO's conclusion).

Next, Petitioner argues that Respondent's violation of the policy requiring distribution of incident reports within 24 hours supports his habeas petition. As explained above, Petitioner cannot rely on the purported violation of an internal BOP policy to support a habeas claim. *See Reeb*, 636 F.3d at 1227. Further, Petitioner fails to show that Respondent violated that policy.

Finally, Petitioner contends that Cueva was biased as the DHO because he exerted pressure on Petitioner to plead guilty, offering reduced sanctions. Offering reduced sanctions to plead guilty is not improper coercion, just as offering a plea deal in the criminal context is not improper coercion. Additionally, Petitioner fails to describe any specific evidence of bias, and the record supports that Cueva was an impartial DHO, who had no personal involvement with the incident or investigation nor personal relationship with Petitioner. "Petitioner must allege facts, not mere conclusions, to state a viable claim for habeas corpus relief." *Smith v. Lepe*, 2026 WL 1998494, at *1 (C.D. Cal. July 9, 2026).

PAGE 15 – OPINION AND ORDER

## CONCLUSION

The Court DENIES Petitioner's Petition for Habeas Corpus Relief under 28 U.S.C.

§ 2241, ECF 1, and Motion to Compel, ECF 12. The Court DENIES AS MOOT Petitioner's

Motion for Summary Judgment, ECF 14.

**IT IS SO ORDERED.**

DATED this 12th day of August, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge